1  JOHN L. BURRIS, Esq., SBN 69888
2  JAMES COOK, Esq., SBN 300212
3  BENJAMIN NISENBAUM, Esq., SBN 222173
   **BURRIS, NISENBAUM, CURRY & LACY, LLP.**
4  7677 Oakport Street, Suite 1120
   Oakland, California 94621
5  Telephone: (510) 839-5200
6  Facsimile: (510) 839-3882
   Email: John.Burris@johnburrislaw.com
7  Email: James.Cook@johnburrislaw.com
8  Email: Bnisenbaum@gmail.com

9
   Attorneys for Plaintiff
10

11
                      **UNITED STATES DISTRICT COURT**
12
                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13

14
   KAREIM MCKNIGHT,                              CASE NO.: 3:22-CV-04600-WHO
15
                       Plaintiff,
16                                                FOURTH AMENDED COMPLAINT
        v.                                        (42 U.S.C § 1983; and pendent tort claims)
17
                                                  JURY TRIAL DEMANDED
18
   CITY AND COUNTY OF SAN FRANCISCO; a
19 municipal corporation; DEAN SHIRAISHI,
   individually and in his official capacity as a San
20 Francisco Fire Department personnel; ALONSO
21 DUARTESOSA, individually and in his official
   capacity as a San Francisco Fire Department
22 personnel; THOMAS SMITH, individually and in
   his official capacity as an officer for the City and
23 County of San Francisco; AMY HURWITZ,
24 individually and in her official capacity as an
   officer for the City and County of San Francisco;
25 RYAN BUCKLEY, individually and in his official
   capacity as an officer for the City and County of
26 San Francisco; FELICIA LEE, individually and in
27 her official capacity as an employee for the City
   and County of San Francisco; and DOES 1-50,
28 inclusive, individually, jointly and severally,

1 | Defendants.

## INTRODUCTION

1. On June 13, 2022, Ms. Kareim McKnight ("Ms. McKnight") along with her friend Amanda Piasecki ("Ms. Piasecki") attended the Golden State Warriors playoff game against the Boston Celtics at the Chase Center in San Francisco, CA. During the first quarter of the game, Ms. McKnight and Ms. Piasecki peacefully engaged in an act of civil disobedience to protest the United States Supreme Court's recent decision to overturn the landmark case *Roe v. Wade*. Ms. McKnight and her friend proceeded towards the courtside seats, displaying their banners which stated, "Overturn Roe? Hell No!" As the women reached the main floor, they were met by Allied Universal Security guards who first ask them to leave, and when they continued to protest, they forcibly dragged Ms. McKnight and her friend out of the arena into the stadium garage. Outside the basketball arena, Ms. McKnight was aggressively pulled from behind and forced onto the ground.

2. While lying prone, a security guard placed his knee in Ms. McKnight's back. During this time, she continued to state that she was engaging in an act of civil disobedience. However, Ms. McKnight, who did not show any signs of resistance or agitation, was handcuffed. As Ms. McKnight lay handcuffed, she continued to chant, "Overturn Roe? Hell No!" At this time, SFPD Captain Amy Hurwitz threatened Ms. McKnight saying that Ms. McKnight would be injected with a sedative if she did not calm down and stop yelling. (Hurwitz BWC, 1:20- 2:50). Ms. McKnight strongly opposed being injected with a sedative. SFFD paramedic Alonso DuarteSosa then placed Ms. McKnight in restraints to hold her to the gurney. (Sosa Depo, pp. 24-26; Smith BWC, 2:31 - 3:05; 6:45 - 8:00.) In spite of Ms. McKnight's protest and without her consent, DuarteSosa held McKnight's arms down and restrained her to the gurney to keep her from moving, while Defendant Shiraishi, another SFFD paramedic, injected Ms. McKnight with the sedative "Versed" against her will. (Smith BWC, 2:31 - 3:05; 6:45 - 8:00.)

3. Ms. McKnight was never physically aggressive with and did not physically threaten or make any verbal threats toward the police, paramedics or the general public. (Sosa Depo, pp. 54-

56.) There was no medical or law enforcement basis for the injection of a sedative. Thereafter, Ms. McKnight, without her permission, was taken to Kaiser Hospital where she was released after a short period of time.

## JURISDICTION AND VENUE

4.     This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343 confer jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in California, which is within the judicial district of this Court. This Court also has supplemental jurisdiction over Plaintiff's state law causes of action under 28 U.S.C. § 1367. Supplemental jurisdiction of this court is invoked, pursuant to 28 U.S.C. § 1367, over the state law claims which are so related to federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

5.     Plaintiff KAREIM MCKNIGHT ("PLAINTIFF," hereinafter referred to as "MCKNIGHT") has been and is a resident of California.

6.     Defendant CITY and COUNTY OF SAN FRANCISCO (hereinafter "CITY") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, CITY has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the San Francisco Fire Department and the San Francisco Police Department and their tactics, methods, practices, customs, and usage. At all relevant times, CITY was the employer of DOES 1 – 50 Defendants. Defendant CITY is vicariously liable under principles of respondeat superior for the California state law violations alleged against the individual Defendants.

7. Defendant DEAN SHIRAISHI (hereinafter "SHIRAISHI"), is an employee with the San Francisco Fire Department ("SFFD"). Defendant SHIRAISHI is being sued in his individual capacity under the Fourth and Fourteenth Amendments, and under Plaintiff's state law claims.

8. Defendant ALONSO DUARTESOSA (hereinafter "DUARTESOSA") is an employee with the San Francisco Fire Department ("SFFD"). Defendant DUARTESOSA is being sued in his individual capacity under the Fourth and Fourteenth Amendments, and under Plaintiff's state law claims.

9. Defendant THOMAS SMITH (hereinafter "SMITH"), is an employee with the San Francisco Police Department ("SFPD"). Defendant SMITH is being sued in his individual capacity under the Fourth and Fourteenth Amendments, and under Plaintiff's state law claims.

10. Defendant AMY HURWITZ (hereinafter "HURWITZ") is a Captain with the SFPD. She being sued in her individual capacity under the Fourth and Fourteenth Amendments, and under Plaintiff's state law claims.

11. Defendant OFFICER RYAN BUCKLEY (hereinafter "BUCKLEY") is an employee with the San Francisco Police Department ("SFPD"). Defendant SMITH is being sued in his individual capacity under the Fourth and Fourteenth Amendments, and under Plaintiff's state law claims.

12. Defendant FELICIA LEE (hereinafter "LEE") is an employee with the San Francisco Fire Department ("SFFD"). Defendant LEE is being sued in her individual capacity under the Fourth and Fourteenth Amendments, and under Plaintiff's state law claims.

13. Plaintiff is ignorant of the true names and capacities of other San Francisco employees employed by the San Francisco Police Department and/or the SFFD and therefore sue these Defendants by fictitious names of DOES 1 through 50 inclusive. Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein. Plaintiff will amend this Complaint to state the names and capacities of DOES 1-50, inclusive, when they have been ascertained.

## ADMINSTRATIVE PREREQUISITES

14. Plaintiff is required to comply with an administrative tort claim requirement under California law. Plaintiff filed a claim against the City and County of San Francisco on August 9, 2022. Plaintiff filed an amended claim against the City and County of San Francisco on September 9, 2022. The claim is presumed rejected by operation of law because 45 days have passed since Plaintiff filed an amended claim. Plaintiff has exhausted all administrative remedies pursuant to California law.

## STATEMENT OF FACTS

15. This incident took place on June 13, 2022 in the evening at or near the Chase Center located at 1 Warriors Way, San Francisco, CA 94158. McKnight went to Game 5 of the NBA finals with her friend Amanda Piasecki. Both had purchased tickets to the game, and attended with the goal of peacefully protesting the imminent United State Supreme Court overturning of *Roe vs Wade*. During the game, McKnight and Piasecki left their seats and went down to the floor, near floor seats, holding banners stating "Overturn *Roe*? Hell No!" and similar slogans to protest for abortion rights. Once McKnight and Piasecki pulled out their banners and began chanting "Abortion on demand and without apology. Without this basic right, women can't be free. Rise up for abortion rights," security guards surrounded them. The women were asked to leave by the security guards but instead they each sat, then lay, down on the floor in an act of civil disobedience while continuing to chant. The security guards then physically removed McKnight and Piasecki by dragging them by their hands and feet on the floor into a tunnel leading to the stadium garage. Inside the tunnel, one security guard aggressively pulled McKnight from behind and forced her to the ground. The guard then turned McKnight onto her stomach in prone position. At this point, San Francisco Police Department police officers arrived at the scene and handcuffed McKnight. Those SFPD officers, including Capt. Hurwitz and Officer Smith, made the decision to let Piasecki (a white woman) leave while at the same time arresting McKnight, who is Black.

16. Capt. Hurwitz accused McKnight of being "borderline violent" even though McKnight had not threatened or exhibited any signs of violence or danger to anyone. (HOLCOMB/TIBITS 0585 – 1000, p. 108. 0692 - 0704), (Hurwitz BWC 13:00 -13:10, 13:50 - 14:30, 15:00 - 15:43, 16:00 - 17:40, 17:40 - 18:15.) Likewise, McKnight's actions were similar to the actions of other protesters who were present at the arena – displaying signs depicting slogans, and chanting. Yet, Capt. Hurwitz made the decision to arrest McKnight alone, and not any of the other protestors who were allowed to leave the arena without incident. Capt. Hurwitz misrepresented to the SFFD paramedics that Ms. McKnight needed medical attention for a shoulder injury although McKnight made it clear to Hurwitz that her shoulder was not injured. (HOLCOMB / TIBITS 0585 – 1000, p. 136 0720); (Hurwitz BWC 13:00 -13:10, 13:50 - 14:30, 15:00 - 15:43, 16:00 - 17:40, 17:40 - 18:15). Defendant San Francisco Police Officer Buckley also lied multiple times about McKnight being in an altered state and having a seriously injured or broken collar bone. (BUCKLEY BWC 24:00 – 24:59). Defendant SFPD Officer Ryan Buckley knew, or should have known, that by misrepresenting to the SFFD paramedics that McKnight had a medical complaint and would be taken into custody, that she would be sedated. (BUCKLEY BWC, 24:00 - 24:59) Ms. McKnight, who was not injured or in a violent or psychotic state, steadfastly refused any injections. However, Officer Smith took charge of the incident and signed off on McKnight being sedated against her consent. Smith told McKnight that she was going to be injected because she was being difficult when it was clear that McKnight would continue to protest and because she would not answer questions about her identity and she continued to protest loudly about *Roe v Wade*. When McKnight protests and turns away, Officer Smith prevents her from doing so and further restrains her, stating: "If you kick the officer, you will be in a different kind of trouble." (Smith BWC 3:08). SFFD employee LEE also warned and threatened McKnight several times that she will be injected if she does not cooperate. (Hurwitz BWC 13:00 - 18:00); (SMITH BWC 4:10 to 4:27)

17. Regardless of her protest, and without her consent, SFFD personnel Defendant SHIRAISHI injected McKnight with "Versed." Defendants LEE and DUARTESOSA both held McKnight down to the gurney, even though she was already in the restraints, while Defendant

Shiriashi sedated Ms. McKnight. (SMITH BWC 4:10 to 4:27); (BUCKLEY BWC 31:27- 31:38). Defendant Ryan Buckley also stood by and watched as McKnight was sedated, because she was in custody of SFPD, and Buckley wanted to make sure that she did not resist being sedated without her consent. (BUCKLEY BWC 26:00 - 24:59, 31:27- 31:38, 33:00 - 33:10, 33:22 - 33:40.) After Shiraishi injects McKnight, Officer Smith tells McKnight: "When you are uncooperative, that's [being injected] what happens". (SMITH BWC 10:00 -10:58).

18. After McKnight is injected against her will, Officer Smith completed a "602 cite and release" process and followed up to do a records check pursuant to the search and detention. It is then that Smith finally releases McKnight from the handcuffs, only after the sedation from the Versed has taken effect. (SMITH BWC, 11:50 - 12:56, 19:30 - 20:00, 21:10 - 21:30). Officer Smith's BWC footage then captures the officers saying, "they took her to St. Francis." (Smith BWC 18:11). The ambulance or medic number was identified as: "Medic 73 on June 14, 2022." (Smith BWC 7:04).

19. Ms. McKnight did not show any signs of dangerous behavior or signs of a medical emergency to justify SFFD personnel injecting her with a sedative without her consent. In addition, Ms. McKnight did not demonstrate any signs of profound agitation, bewilderment or physical aggressiveness toward anyone to justify a medical need to be sedated. She was strapped to a gurney and handcuffed. Thus, she did not pose a threat to anyone. Further, cell phone footage taken immediately after the injection also demonstrates that Ms. McKnight was not incoherent such as to indicate a mental health related emergency necessitating sedation. Ms. McKnight clearly and consistently communicated her opposition to the SFFD and SFPD personnel threats to inject her with a sedative. Ms. McKnight further expressed, to no avail, that she may even be allergic to a sedative. She was particularly dismayed that the fire personnel made no attempt to determine if she would be allergic or not.

20. According to the website drugs.com, Versed is a benzodiazepine that is used to help an individual relax before surgery or often prescribed to reduce anxiety. **See Exhibit A**. Ms. McKnight alleges that before she was injected there were no medical questions asked of her about

whether she was allergic to any medications nor was she asked any questions about her health. Ms. McKnight did not exhibit any signs of anxiety nor showcase any signs of danger or threat to herself or to others to justify Defendant Shiraishi injecting her against her will.

21. On information and belief, the American Medical Association has cautioned emergency physicians from using "Versed," a ketamine that can slow or stop a person's breathing or lead to a possible allergic reaction. **See Exhibit B**. Ms. McKnight asserts that she was never informed about what particular drug she would be injected with nor asked if she was allergic to it. Ms. McKnight was never asked if she was diagnosed with glaucoma, had any breathing problems or experienced congestive heart failure. According to the American Medical Association, these are questions emergency physicians are strongly recommended to ask before a drug like Versed is given. Ms. McKnight further alleges that there was no determination made that there was a clear medical need to inject her with a sedative. Ms. McKnight was verbally protesting from a gurney. She was not verbally abusive or physically aggressive toward the paramedics or police personnel.

22. As a result of being injected, McKnight became dizzy and began to slur her words. Ms. McKnight was in a dazed-like state while she was being transported to Kaiser Permanente in San Francisco. At the hospital it was determined that Ms. McKnight was injected with 5 milligrams of Versed. Ms. McKnight suffered physical injuries, emotional distress, and a violation of her bodily integrity as she was sedated without her consent. The medical assault inflicted on Ms. McKnight by SFFD personnel was unreasonable, unlawful, and unnecessary.

**FIRST CAUSE OF ACTION**
**(Violation of the Fourth and Fourteenth Amendments of the United States Constitution- Unnecessary Force and Due Process)**
**(Plaintiff against Defendants SMITH, HURWITZ, BUCKLEY, SHIRAISHI, DUARTESOSA, LEE, and DOES 1-50)**

23. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 22 of this Complaint.

24. Defendants' above-described conduct constituted violations of Kareim McKnight's rights as provided for under the Fourth and Fourteenth Amendments to the United States

Constitution. A Fourth Amendment seizure occurs when there is "an intentional acquisition of physical control," and "a reasonable person would have believed that he was not free to leave," in light of the circumstances. A competent person has a constitutional right and protected liberty interest in refusing unwanted medical treatment. The due process clause of the Fourteenth Amendment substantively protects a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights voluntarily.

25. Defendant SMITH threatened further repercussions if McKnight resisted being sedated against her consent. Then SMITH supervised the injection to make sure that MCKIGHT does not resist. (SMITH BWC, 3:10 - 4:27; 9:00 - 12:56) SMITH told McKnight that she was being injected simply because she was uncooperative. (SMITH BWC, 9:10 - 9:22). Moreover, SMITH conducted a search on MCKNIGHT after the injection – demonstrating that the injection was purely for law enforcement purposes.

26. Defendant, CAPTAIN HURWITZ made the decision that because the other protesters had left the stadium, Ms. McKnight must have been suffering a mental health crisis and therefore needed to be sedated. (Hurwitz BWC 1:20 - 2:50, 10:45 - 11:00). HURWTIZ's conduct in misrepresenting McKnight's mental status and need for medical attention were contributing factors leading to Officer Smith's order to unlawfully inject McKnight with a sedative. HURWITZ communicated that Ms. McKnight was "claiming injury" in her shoulder to the other officers and emergency personnel, thereby creating a false scenario requiring the paramedics to be called. HURWITZ then went on to communicate with paramedics that because Ms. McKnight needed this medical attention but refused to answer questions and will be taken into custody, she may need to be sedated. (Hurwitz BWC 13:00 -13:10, 13:50 - 14:30, 15:00 - 15:43, 16:00 - 17:40, 17:40 - 18:15). Capt. HURWITZ set in motion the series of acts by the other Defendants causing Ms. McKnight to be injected with a chemical restraint in violation of Ms. McKnight's constitutional rights.

27. Defendant BUCKLEY lied multiple times about McKnight being injured because BUCKLEY knew that if he misrepresented to paramedics that McKnight had a medical complaint and would be in custody, that she would be sedated. (BUCKLEY BWC, 24:00 - 24:59) BUCKLEY stood close because he wanted to make sure that she did not resist being sedated without her consent. (BUCKLEY BWC 26:00 - 24:59, 31:27- 31:38, 33:00 - 33:10, 33:22 - 33:40)

28. Defendants SHIRAISHI, DUARTESOSA, and LEE of SFFD violated Ms. McKnight's rights because of their participation in the unreasonable use of force against her in violation of the Fourth and Fourteenth Amendments of the Constitution. Defendant SHIRAISHI injected McKnight against her will with no apparent medical need, merely because the officers had instructed him to. After this incident, SFFD Lt.'s Holcomb and Tibits conducted an investigation into SHIRAISHI'S decision to sedate McKnight. The investigation found that SHIRAISHI violated SFFD policy. As a result, SHIRAISHI was temporarily suspended and given a performance improvement plan.

29. Defendant DUARTESOSA was deposed by Plaintiff's counsel in January of 2024. DUARTESOSA admits that he placed McKnight in restraints to hold her to the gurney (Duartesosa Depo, pp. 24 - 26); and that he held McKnight arm and the restraints down in order to keep her from resisting the injection. (Duartesosa Depo, p. 56 - 59); Moreover, Defendant SMITH'S BWC shows DUARTESOSA placing MCKNIGHT in restraints and holding her down while Defendant SHIRAISHI administered the shot. (SMITH BWC 2:31 - 3:05, 6:45 - 8:00.) DUARTESOSA also admitted that McKnight did not verbally threaten physical violence to anyone present. (Duartesosa Depo, pp. 54 - 56). DUARTESOSA merely thought that MCKNIGHT was too loud. (Duartesosa Depo, pp. 34, 55, 76.) As such, DUARTESOSA was an integral participant in the unconstitutional injection of McKnight with a sedative against her will.

30. Defendant LEE warned and threatened McKnight several times that McKnight would be injected if she did not cooperate. (HURWITZ BWC 13:00 - 18:00). Defendant LEE helped Defendant DUARTESOSA hold down McKnight in the restraints while Defendant SHIARISHI

sedated McKnight by injection. Thus, Defendant LEE was an integral participant in the unconstitutional injection of McKnight with a sedative against her will.

31. As a result, Defendants SMITH, HURWITZ, BUCKLEY, SHIRAISHI, DUARTESOSA, LEE, and DOES 1-50 are liable for depriving Ms. McKnight of her right to refuse medical treatment.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
(*Monell* – Municipal Liability for Unconstitutional Custom or Policy)
(42 U.SC. § 1983)
(Plaintiff against All Named Defendants, CITY, and DOE)

32. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 31 of this Complaint.

33. Plaintiff is informed and believes and thereon alleges that Defendant CITY and County of San Francisco enforcement agencies and governments' policy or custom, whether made by its lawmakers or by those who represent official policy, inflicted the injury that the government as an entity is responsible for under § 1983. Governmental entities are liable for monetary, declaratory, or injunctive relief where an action that is alleged to be unconstitutional is implemented or executed as a policy statement, ordinance, regulation, or officially ratified or adopted decision. Local governmental entities also can be sued for constitutional deprivations visited pursuant to governmental policies or customs. Entity liability arises when the agency directs the deprivation of federal rights through an express government policy. A policy of inaction is based on a governmental body's failure to implement procedural safeguards to prevent constitutional violations.

34. Plaintiff is informed and believes that there is a lack of policy and training as to when and how an injection should not be and/or administered to a protestor. Plaintiff is informed and believes that the government does not have a policy or criteria as to its standard for injecting a protestor. Therefore, Plaintiff believes this lack of policy allows government personnel to arbitrarily inject anyone subjectively without clear signs of a medical need. Ms. McKnight, at no time, was

aggressive or physical with officers and medical personnel. In addition, there was no discussion of whether there was a clear medical need to sedate Ms. McKnight. Ms. McKnight was not dangerously agitated or suffering from any medical emergency justifying SFPD personnel's threat to have her injected with a sedative or the SFFD paramedics' injection of a sedative without her consent. Further, Ms. McKnight was strapped onto a gurney when SHIRAISHI injected her. Also, Ms. McKnight was not under the influence of any drugs or alcohol, and was not suicidal. It is clear, and as Officer SMITH can be heard telling McKnight on the BWC, that McKnight was injected because it was clear that MCKNIGHT would continue to protest, and as SMITH states: "When you are uncooperative, that's what happens." (SMITH BWC 10:00 -10:58).

35. Plaintiff is informed and believes that nearly 4,000 individuals were injected with a sedative by SFFD since 2018 according to the San Francisco Standard. **See Exhibit C.** Plaintiff is informed and believes that there is no standard or information available to determine the criteria for injecting a protestor. Plaintiff believes this arbitrary practice is done in an effort to promote the interest of SFFD and SFPD which ultimately affects patients.

36. As a result, Defendants CITY and DOES 1-50 are liable for *Monell* violations.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Negligence)**
**(Plaintiff against Defendants CITY, HURWITZ, SMITH, BUCKLEY, SHIRAISHI, DUARTESOSA, LEE, and DOES 1-50)**

37. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 36 of this Complaint.

38. An individual is liable for injuries caused by failure to exercise reasonable care under the circumstances. A cause of action for negligence arises when there is a legal duty to use due care. There is breach of the legal duty and the breach is the proximate or legal cause of the resulting injury.

39. Defendants, without due care, injured Plaintiff. Defendants SFPD HURWITZ, SMITH, and BUCKLEY knowingly misrepresented the scenario and thus set forth a chain of actions by which all other Defendant's conformed their conduct to needlessly and without consent injected

Ms. McKnight with a chemical sedative. Defendant HURWITZ, throughout the incident, misrepresented to the paramedics that McKnight was going to be violent although she was at that point handcuffed and physically restrained. HURWITZ asserts that McKnight seems to be borderline violent. (HOLCOMB/TIBITS 0585 - 1000p 108. 0692 - 0704), (Hurwitz BWC 13:00 -13:10, 13:50 - 14:30, 15:00 - 15:43, 16:00 - 17:40, 17:40 - 18:15) Hurwitz was an integral participant in the actions and decision making scheme to inject McKnight with a sedative. Defendant SMITH threatened McKnight with further repercussions if resisted being sedated against her consent. Then SMITH stood by to make sure that MCKNIGHT does not resist while being injected against her consent. (SMITH BWC 3:10 - 4:27). SMITH told McKnight that she is being injected simply because she was uncooperative. (SMITH BWC 9:10 - 9:22). Defendant BUCKLEY lied multiple times about McKnight being injured and then stood by and watched as MCKNIGHT was sedated. (BUCKLEY BWC 26:00 - 24:59, 31:27- 31:38, 33:00 - 33:10, 33:22 - 33:40).

40. Defendants SFFD personnel had a duty as medical officials to inject a person only with that person's consent, unless the person is unable to consent. SFFD personnel SHIRAISHI, DUARTESOSA, and LEE breached their duty by causing Ms. McKnight to be injected with a sedative without her consent. At the time the injection was given, Ms. McKnight was coherent, rational and strongly opposed to receiving an injection. As a result of this negligence, McKnight suffered injuries which included dizziness, headaches, and body discomfort as a proximate and direct cause of the Defendants' negligent conduct.

41. Defendant CITY is liable under principles of *respondeat superior*, since the above-named Defendants were acting in the course and scope of their employment at the time of the incident

42. As a result, Defendants CITY, HURWITZ, SMITH, BUCKLEY, SHIARISHI, DUARTESOSA, LEE, and DOES 1-50 are liable for negligence.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**(Assault/Battery)**
**(Plaintiff against Defendants CITY, SHIRAISHI, SOSA, LEE,**
**SMITH, HURWITZ and DOES 1-50)**

43. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 of this Complaint.

44. Defendants acted with intent to cause harmful or offensive contact by touching plaintiff in a harmful or offensive manner. Defendant(s) using a needle injected Ms. McKnight with a sedative without her permission that penetrated her skin causing her harm. Plaintiff did not consent to Defendants' harmful contact. Battery occurred when Defendants actually made contact with and harmed the Plaintiff. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

45. Defendants SMITH and HURWITZ intentionally caused McKnight to fear imminent offensive and unwanted bodily contact by threatening her with the injection of a chemical sedative. Defendant HURWITZ generally attempted to manipulate the situation in such a way to lead to MCKNIGHT being injected. (HOLCOMB/TIBITS 0585 - 1000 p 136 0720), (Hurwitz BWC 13:00 -13:10, 13:50 - 14:30, 15:00 - 15:43, 16:00 - 17:40, 17:40 - 18:15). HURWITZ, throughout the incident, misrepresented that MCKNIGHT was going to be violent although she was handcuffed and restrained, even going so far as calling McKnight "borderline violent." (HOLCOMB/TIBITS 0585 - 1000p 108. 0692 - 0704), (Hurwitz BWC 13:00 -13:10, 13:50 - 14:30, 15:00 - 15:43, 16:00 - 17:40, 17:40 - 18:15). Moreover, HURWITZ misrepresented to SFPD and SFFD personnel that McKnight needed medical attention when that was not the case. (Id.) Defendant SMITH threatened further repercussions if McKnight continued to be uncooperative by refusing to give her name (SMITH BWC 3:10 - 4:27), and that since she's been uncooperative, the CITY policy says they can inject her. (SMITH BWC 9:10 – 9:22).

46. Defendants SHIRAISHI, DUARTESOSA, and LEE intended to touch Ms. McKnight in a harmful or offensive manner. Ms. McKnight reasonably believed she was about to be touched in a harmful or offensive manner. It reasonably appeared to Ms. McKnight that the Defendant employees were about to carry out the threat. Ms. McKnight did not consent to Defendant

SHIRAISHI's harmful contact, which ultimately led to her injuries. The Defendant's actions were excessive and unreasonable. Defendant DUARTESOSA strapped McKnight to the gurney while Defendant LEE threatened McKnight with injection if she didn't cooperate with the SFPD officers. Defendants DUARTESOSA and LEE held McKnight down against her will to prevent her from being able to resist being injected by Defendant SHIRAISHI.

47. As a result, Defendants are liable for assault and battery violations.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
(Cal Code § 57.1 – Ralph Civil Rights Act)
(Plaintiff against Defendants CITY, SHIRAISHI, DUARTESOSA, SMITH, HURWITZ, and DOES 1-50)

48. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 of this Complaint.

49. Plaintiff claims that Defendants committed an act of violence against her because of her race, color, national origin, or sexual orientation. Defendants committed a violent act against the Plaintiff's person. A substantial motivating reason for Defendants' conduct was their perception of the Plaintiff's race, color, national origin, sexual orientation, or other immutable characteristics. Plaintiff was harmed and defendants' conduct was a substantial factor in causing harm to plaintiff.

50. Defendant CITY officers racially profiled MCKNIGHT. During the incident, CITY officers witnessed at least two women, Ms. McKnight and Ms. Piasecki, protesting for abortion rights at a basketball game. Defendant HURWITZ under the apparent authority of her role as a Captain for the Defendant CITY Police Department, allowed Ms. Piasecki (a white woman) to leave without citation or arrest. Defendant HURWITZ accused McKnight (a Black woman) of being "borderline violent," even though McKnight acted in a similar manner as Ms. Piasecki up until the escalation by Defendants SMITH and HURWITZ threatening McKnight with the injection of Versed. Defendant CITY agents had the temerity to use threat and force against MCKNIGHT because she is a Black woman, while at the same time they let the white woman engaged in the same conduct walk away without incident.

51. On January 5, 2024, Plaintiff's counsel deposed SFFD Paramedic Captain Jeffery Covitz. Covitz stated that SFFD Department of Continuous Quality Improvement (CQI) maintains statistical records and data on use of Versed for restraint purposes, including the race and circumstances of those injected compared to those who are not. This department is led by Dr. Jeffery Lacocque. Despite multiple requests, Defendants have refused to produce the information relaying that data which Plaintiff could use to further substantiate the disparities in the treatment she, as a Black woman, received while the other white protestors were not subjected to any physical abuse by SFPD and SFFD personnel on the night of the incident.

52. As a result, Defendants are liable for Ralph Civil Rights Act violations. Defendants CITY is liable under principles of respondeat superior, since Defendant Officers were acting in the course and scope of their employment at the time of the incident.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(Violation of CALIFORNIA CIVIL CODE § 52.1)**
**(Plaintiff against Defendants CITY, SHIRAISHI, DUARTESOSA, SMITH, HURWITZ, and DOES 2-50)**

53. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 52 of this Complaint.

54. Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with the Plaintiff's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code § 52.1. Defendants did not suspect Ms. MCKNIGHT of committing a crime. However, Defendants used excessive force when they used the chemical restraint Versed to restrain Ms. MCKNIGHT.

55. As a direct and proximate result of Defendants' violations of Civil Code § 52.1, Plaintiff suffered violations of her constitutional rights, and suffered damages as set forth herein. Plaintiff is entitled to injunctive relief and an award of his reasonable attorney's fees pursuant to Civil Code § 52.1(h). Plaintiff is entitled to treble damages, but in no case less than $4,000.00 and an award of his reasonable attorney's fees pursuant to Civil Code § 52(a). Under the provisions of

California Civil Code §52(b), Defendant is liable for punitive damages for each violation of Civil Code §52.1, reasonable attorney's fees and an additional $25,000.00.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JURY DEMAND

Plaintiff hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages according to proof;
2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;
3. For punitive damages and exemplary damages in amounts to be determined according to proof as to Defendants DEAN SHIRAISHI, ALONSO DUARTESOSA, FELICIA LEE, AMY HURWITZ, THOMAS SMITH, Officer BUCKLEY, and DOES 1 through 50 and/or each of them;
4. Any and all permissible statutory damages;
5. For reasonable attorney's fees pursuant to 42 U.S.C. §1988;
6. For cost of suit herein incurred; and
7. For such other and further relief as the Court deems just and proper.

Dated: March 15, 2024                                   **Burris, Nisenbaum, Curry & Lacy, LLP**

                                                                              /s/ John L. Burris
                                                                              John L. Burris
                                                                              Attorney for Plaintiff